ORDER OF DISBARMENT.

Argued January 4; decided February 28, 1898.

OREGON CITY *v.* CLACKAMAS COUNTY.
[52 Pac. 310.]

1. OREGON CITY CHARTER — STATUTES — ROAD TAXES.— The charter of Oregon City of 1895, chapter V, § 28, giving the city council exclusive control of all funds collected within said corporation under general laws for the improvement of roads and streets, and providing for the disposal of such funds, operates as an amendment of Hill's Ann. Laws, § 4085, subd. 4. Its effect is (1) to withdraw from the County Court of Clackamas County the power to control the expenditure of road taxes within the limits of Oregon City, or to divide that territory into road districts (*Oregon City* v. *Moore,* 30 Or. at page 220, overruled on this point); (2) to oblige said court to apportion and pay over to said city 60 per cent. of all road taxes collected from property and individuals therein; and (3) to empower said city to expend its portion of said tax without regard to said court. BEAN, J., dissents.

2. WRIT OF REVIEW — PROCEEDINGS OF COUNTY COURT.— A writ of review, as provided by section 902, Hill's Ann. Laws, is the proper remedy for the correction of errors of a county court in apportioning, or refusing to apportion, the road fund of the county.

3. WAIVER OF OBJECTION.— An objection that an exhibit attached to a return is not part thereof, will not be considered on appeal, where all parties have tacitly considered it as properly in the case all through the trial.

From Clackamas: THOS. A. MCBRIDE, Judge.

Proceedings by Oregon City against Clackamas County, its judge and commissioners, to review the action of the county court while exercising the powers pertaining to county commissioners in disallowing a claim by the city for the amount of certain road taxes. From a judgment in favor of plaintiff, defendants appeal.

MODIFIED.

For appellants there was a brief over the names of *T. J. Cleeton*, district attorney, and *Harvey E. Cross*, with an oral argument by *Mr. Cross*.

For respondent there was a brief over the names of *C. D. & D. C. Latourette*, with an oral argument by *Mr. C. D. Latourette*.

MR. JUSTICE WOLVERTON delivered the opinion.

The purpose of this proceeding is to review the action of the county court while exercising the powers pertaining to county commissioners, in disallowing and rejecting a claim by the city for the amount of the road taxes levied by the county in pursuance of subdivision 4, section 4085, Hill's Code, as amended in 1893 (Session Laws, 1893, 60), and collected from persons and property within the city limits for 1895 and 1896. The city bases its right to such taxes solely upon section 28 of chapter V of its charter, passed in 1895, which reads as follows: "The council shall have exclusive control and direction of all funds collected under general laws for the improvement of roads and streets within said corporation, and the street superintendent shall perform the duties of supervisor as re-

quired by the general laws of this state relating to streets and highways; but he shall report to and be under the direction of the city council, and not to the board of county commissioners of Clackamas County; *provided*, that the city council may, by ordinance, direct that any or all of such funds collected for road purposes be expended on any main county road leading into Oregon City when, in their judgment, the city would be benefited thereby; *provided*, that the city council shall turn over to the County Court of Clackamas County 40 per cent. of the funds so collected each year, and the same shall be expended under the direction of said county court on main roads leading into Oregon City": Laws, 1895, 495. This section seems to have been drawn under the mistaken idea that road taxes levied by the county court were to be collected by a city officer, and apportioned by the city council; else why should it provide that 40 per cent. thereof should be turned over to the county court. It was certainly not intended that the county court should turn over the whole amount collected to the city, and that thereupon the city should return 40 per cent. to the county. If so, it introduces a novel and useless procedure, without the accomplishment of any specific purpose.

1. It is somewhat difficult to determine just what was intended to be accomplished by its adoption. We believe, however, that its legal effect is to withdraw the territory comprised within the city limits from the jurisdiction of the county court to lay it off into road districts, or to control the expenditure of road taxes therein. The city is authorized to direct the expendi-

ture of the road fund to which it is entitled, and is given somewhat enlarged powers touching it, in that it may, if it so ordains, apply all or any part of it upon any main county road leading into the city. It has been decided that the taxes which go to make up the fund alluded to, when levied by the county court and collected by the sheriff, belong to the county until apportioned by such court, and that the act of apportionment is judicial in its nature: *Oregon City* v. *Moore*, 30 Or. 221 (46 Pac. 1017, and 47 Pac. 851). The provisions of said subdivision under which the county court must act in making the apportionment of road funds so levied and collected are limited and qualified to some extent by the city charter, and of this condition the court must take cognizance. The palpable intendment of the charter provision is to give to Oregon City 60 per cent. of the road taxes collected from individuals and property within its limits. This includes both the mill tax and the polls levied and assessed by the county for road purposes. The 60 per cent. of these funds the county court is required to ascertain, apportion and turn over to the city, and the remaining 40 per cent. it may withhold and use as the law directs. The city is not concerned with the latter portion. The case of *Oregon City* v. *Moore*, 30 Or. 221, was decided upon the theory that it was entirely optional with the county court as to what amount of the road fund it should apportion to the city or the road districts comprising it; but, after a very careful re-examination of the city charter and the statute governing in the premises, we are satisfied that the interpretation here indicated is the better

one.   Indeed, it is the only one to our minds which can render the charter provision in question operative for any essential purpose.   This view, however, does not affect any question directly decided by that case.

2.   The proceeding for the ascertainment and apportionment of this fund to the city being of judicial cognizance, it would seem that a writ of review was the proper remedy for the correction of errors of the county court, if any were committed:  Hill's Ann. Laws, § 902.

3.   The return to the writ of review has attached thereto an affidavit of N. M. Moody, who was in 1895 and 1896 the deputy sheriff of said county, showing the amount of road taxes collected from property and polls within said city for the two years, aggregating $5,475.26.   It is now objected that said affidavit is no part of the files or record of the county court, and should not be considered in determining the matter in hand, and that, as there is no other evidence of the amount of such taxes collected by the county authorities, the judgment should be reversed in toto.   The affidavit was attached by the appellants, however, upon the order of the circuit court requiring the county clerk to amend and complete his return of the proceedings of the county court.   There was no motion to strike said affidavit from such return, nor other objection taken to it in the court below.   It was apparently considered by the tacit consent of both parties as having been properly and rightfully made a part of the return.   We think the objection comes too late to be entertained in this court.

It is also urged that the county court had, prior

to the presentation of the plaintiff's claim, exhausted the funds derived from road taxes; but this is no defense to the action. It should have observed the law, and set aside to the city the funds to which it was entitled. But, inasmuch as the city is entitled to but 60 per cent. of the funds shown to have been collected, the judgment of the circuit court will be so modified that it shall direct the county court to apportion and turn over to the City of Oregon City the sum of $3,285.15 only.

MR. JUSTICE BEAN: I am constrained to dissent in this case. My views on the question involved are sufficiently indicated in the opinion in *Oregon City* v. *Moore*, 30 Or. 221 (46 Pac. 1017, and 47 Pac. 851).